**Jeanne Suppe et al., Appellees, v. Albert Sako et al., Appellants.**

**Gen. No. 9,678.**

Heard in this court at the
May term, 1941.        Opinion filed August 7, 1941.
Rehearing denied October 7, 1941.

CHARLES H. BORDEN and PAUL F. POMEROY, both of Chicago, for appellant C. A. Simmons.

DAVID ALSWANG and RALPH M. SCHWARTZBERG, both of Chicago, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellants are three tavern keepers and they appeal from judgments of the circuit court of DuPage county rendered against them and one Albert Sako, driver of a car, in an automobile accident case. Appellees brought suit to recover damages which they alleged they sustained by reason of an automobile collision and based their right to recover under the provisions of the Dram Shop Act. Their complaint alleged intoxication of Sako caused by liquor purchased from appellants, and that he was the driver of the automobile which collided with the car owned by appellee, James A. Kluckhohn, in which the other appellees were riding. A jury trial resulted in verdicts for Jeanne Suppe for $7,000, for John Mohr for $7,000, for Richard Kluckhohn for $600 and for James A. Kluckhohn for $300. Upon these verdicts, judgments were rendered after James A. Kluckhohn had remitted $60.

Appellees' counsel filed an affidavit showing the defense was being conducted by named insurance companies, doing business in DuPage county, employing numerous clerks, stenographers, investigators and attorneys. It asked leave to inquire of the jurors on voir dire whether they had any financial or other interests

or were policy holders in either of the companies. Counter affidavits were filed to the effect that the stockholders in each company are nonresidents, but nothing was stated as to employees or policy holders. The court permitted appellees' counsel to ask one question of the jurors collectively, whether any of them were employed by or interested in any way as policy holders or otherwise, and whether any members of their families or immediate friends had any interest in the named companies. The question followed the language of the inquiry in *O'Neal v. Caffarello*, 303 Ill. App. 574 and under the ruling in that case and in the leading case of *Smithers v. Henriquez*, 368 Ill. 588, there was no error in permitting the inquiry.

The evidence discloses that the plaintiffs Jeanne Suppe, John Mohr and Richard Kluckhohn were respectively 20, 21 and 20 years of age. A short time before the accident each of them was a college student. Mohr had four or five years musical education and at times had played a piano in night clubs. Miss Suppe, who lived in Ohio, was visiting her grandmother in Naperville at the time of the accident and Richard Kluckhohn was employed at a filling station there. The accident happened about 11:00 p.m., May 6, 1939 on Ogden avenue at the Yender farm east of Naperville. James Kluckhohn is a brother of Richard and owned the Ford car involved in the collision. Richard had borrowed it from his brother James and he and John Mohr had supper that evening with Jeanne Suppe at the home of her grandmother. From there they went to a ten-cent store, then drove to Aurora, returning to Naperville about ten o'clock without leaving the car. At Naperville they each had a hamburger and a glass of coca cola at a candy kitchen. They stayed there about forty-five minutes and then drove to Ogden avenue, a four-lane highway, along which they were proceeding east when the accident happened. Mohr was driving, Jeanne Suppe was on the front seat with

him, and Richard Kluckhohn was on the rear seat. The latter testified they were driving in the southermost lane, between 35 and 40 miles per hour; that when he first saw the Sako car it was 30 feet in front of him and he saw two silver disks; that the next thing that happened was the crash; that none of the three had any alcoholic liquor that evening; that they did not pass any car after they left Naperville; that the driver of their car did not apply the brakes or turn to the right or left; that the road was open; that he did not know whether there were any cars ahead of them in the outer lane, but that they did not attempt to pass any car just before the accident. Mohr and Miss Suppe were severely injured and unconscious some hours. They both testified that they did not remember anything about the occurrence after they turned right into Ogden avenue and a qualified physician testified that a sudden or severe shock can so affect the mind as to completely blot out a recollection of anything that may have transpired or occurred just previous to the time the shock was received.

Mr. Sako examined by counsel for appellees under section 60 of the Civil Practice Act, testified his occupation is a building trades laborer, but that he was unemployed on the date of the accident; that he took two men, Messrs. Sulski and Janofski, to their job at Summit that morning, arriving there about ten o'clock; that he had one drink of whiskey from a half-pint bottle purchased by Janofski on the way to work; that the job was finished about one o'clock, but they had to stay until about 4:30 to get their pay, after which he started home with them; that they reached the tavern of appellant Adams about 5:30 in the evening and each had two ten or twelve ounce beers; that he took Janofski home and after awhile they all went to the tavern of appellant Stupay, and each had a bowl of soup and one more beer, but he had no whiskey, and they left Stupay's tavern about six o'clock; that

they then did some shopping in Downers Grove and he took Janofski home about nine o'clock; that he and Sulski left the home of Janofski about 10:30 and went to the tavern of appellant Simmons, where each had two beers; that he had no whiskey and left there about five minutes before the accident; that he was driving about 35 miles per hour; that he first saw appellees' car about 150 feet away when it came from back of another car, trying to get into the inner lane, and coming about 50 miles per hour; that the witness went into his inner lane because he had to turn south about two blocks away to get onto his home street, and turned in on account of traffic while he had an opportunity; that his car was north of the center line of the pavement, and he could not say whether appellee's car crossed that line; that after the accident somebody pulled him off the highway. He admitted he had previously testified on the taking of his deposition that appellees' car was traveling nearer 35 than 40 miles per hour. When he was called by appellants as their witness he said he did not remember whether he had previously admitted he was driving while under the influence of intoxicating liquor and testified that he did not know whether he was or was not under the influence of intoxicating liquor at the time of the accident, but that he was no drunkard and was in the habit of taking five or six glasses of beer daily, and was not intoxicated at the time of the accident. Appellants respectively corroborated his testimony as to the number of drinks taken at their taverns and testified he was not intoxicated when he left their premises. Appellant Adams, in his testimony, said Sako and another man were having a discussion at his tavern about a union and were talking loudly shortly after five o'clock in the evening. The evidence further discloses that police officers, by means of a searchlight, found Sako after the accident lying down in a field about 200 feet away from the point of collision. Rich-

ard Kluckhohn and four disinterested witnesses who saw Sako shortly after the accident testified that in their opinion he was intoxicated.

The testimony shows the James Kluckhohn car was worth $240 and upon the motion for a new trial he voluntarily remitted $60 of the $300 verdict. Appellants argue that the amount of the verdict as to the car and the large amounts of the other verdicts in favor of appellees show the verdicts were all capricious, arbitrary and in disregard of the facts. As to the car, the jury may have felt the owner was entitled to the $60 for loss of its use. Whatever harm was done to appellants by that verdict was eliminated by the remittitur. The evidence is that Mohr suffered fractures of the nose and cheek bones, requiring 35 or 40 sutures, and a comminuted fracture of the jaw that required it to be wired together for eight weeks, during which time he could not take solid food. He had punctures in one hand and an injury to the motor nerve of the left arm which caused it to shrink in size for a year, with weakening and impairment of the use of that arm and his hand. In addition, he suffered a severe nervous shock and concussion. Miss Suppe's nose was crushed, her lip cut through, requiring eight sutures. Her back and leg were injured. She had to breathe through her mouth and at the time of the trial was still under treatment for her nose and back. A doctor testified her nose will probably require two additional operations. Richard Kluckhohn's injuries were not so severe, but the evidence shows the verdict of $600 is not excessive. In view of the evidence, we do not believe that the verdicts are excessive and the evidence does not show they are capricious, arbitrary or in disregard of the facts.

The claim that the court erred in permitting three witnesses to testify that in their opinion Sako was intoxicated is without merit. Yender based his opinion upon the way Sako walked when the police officers

brought him in from the field. Flanders' opinion was formed from watching him walk and observing his manner as he talked at the police station. The witness Lange testified he smelled Sako's breath, observed his demeanor as he talked, noticed the condition of his eyes and his walk, and based thereon, he formed an opinion that he was intoxicated. In *City of Aurora v. Hillman*, 90 Ill. 61, relied upon by appellants it appeared that Hillman was walking on a sidewalk and his foot accidentally went into a hole when a loose plank in the walk was tipped up by his companion. A witness for the city testified he saw Hillman down on the sidewalk with liquor spilled from his dinner pail, but could not swear he was intoxicated. He was then asked whether from what he saw at that time, Hillman or his companion were under the influence of liquor. The court said the question called for an opinion, not from personal appearance or conduct of the men, but merely from the fact the witness saw Hillman down on the sidewalk with liquor spilled from his pail, and there was no error in sustaining an objection to the question. That ruling obviously has no application here where the opinion of the witnesses was based on the personal appearance of Sako. The applicable doctrine, as stated in the *Hillman* case, is: "A witness, by observation and by the exercise of his perceptive faculties, his five senses, can learn and know facts, and such facts he may state. He would not be confined to a detail of the combination of minute appearances that have enabled him to ascertain the fact of intoxication. The details of conduct, attitude, gesture, words, tones, and expression of eye and face may be stated by him, or he may state the fact of intoxication, a fact which he can ascertain by personal observation, as he ascertains other facts." In *Dimick v. Downs*, 82 Ill. 570, the court said: "Whether a person is nervous and excited, or calm, or whether drunk or sober, are facts patent to the observation of all, and their comprehension requires no peculiar scientific knowledge."

There was no error in admitting the testimony of the witnesses mentioned.

Dr. Kunsch, who made tests of Sako at the police station for sobriety, testified he was not totally drunk, but was under the influence of liquor to such an extent that he could not safely drive a car; that he could not walk a straight line very well, his pupillary reflexes were sluggish and he talked slowly and with an effort; that he put stitches in Sako without the patient showing any signs of pain, which might indicate he had an awful lot to drink or was stunned in the accident. While Sako and the tavern keepers testified he was not intoxicated, they are interested parties. Whether or not a person is intoxicated is a question of fact for the jury and it was their peculiar province to decide from all the evidence where the truth lay. (*People v. Schneider,* 362 Ill. 478.) The fact that Sako had a cut on his chin, a pain in his chest for which Dr. Kunsch strapped him, a cut on his left shin and minor bruises on his hands and knees together with his claim that his condition after the accident was the result thereof, are not convincing that he was not intoxicated, in the light of the testimony of the disinterested witnesses. The evidence sufficiently upholds the verdict that Sako's intoxication was the proximate cause of the accident. Whether the liquor purchased from appellants was the cause or partial cause of his intoxication was also a question for the jury. While Sako testified he had only one drink of whiskey about ten o'clock in the morning, the jury could consider that he was a drinking man and was with the man all day who had the whiskey. Whether Sako told the truth about it and whether he and appellants told the truth about the drinking in their taverns was for the jury to decide. He was not corroborated except by appellants. He was drinking and talking loudly in the Adams tavern and the jury could well have believed that he was then starting toward becoming intoxicated, and they evidently concluded the beer purchased there and from

the other appellants caused his intoxication. We see no reason to disturb the finding.

It is urged that the trial court erred in refusing to give five peremptory instructions to the effect that appellees could not recover if they were guilty of contributory negligence. The complaint charged willful and wanton misconduct on the part of Sako. It is elementary that contributory negligence is not a defense to such a charge. That charge was in issue, and the court refused appellants' motion to strike it at the close of all the evidence. The refused instructions were offered by all the defendants, including Sako. Appellants offered no instruction on their own behalf only and for this reason alone the instructions were properly refused.

The testimony shows that none of appellees had taken any intoxicating liquor, and there is no testimony tending to show they had been in any place dealing therein. The innuendo that they were intoxicated is wholly unwarranted by anything appearing in the record.

On cross-examination of Dr. Boon, the court refused to permit him to refresh his recollection as to Miss Suppe's increase in temperature from a hospital record not made by him. There was no error in such refusal. (*Diamond Glue Co. v. Wietzychowski,* 227 Ill. 338.) Nor was there any error in sustaining an objection to the question asked of Yender if he had ever been drunk, nor in striking out and sustaining objections to testimony of Mohr on cross-examination with reference to whether the places where he had been employed to play the piano sold liquor or were taverns. None of such testimony could have any bearing upon the issues in this case.

Appellants had a fair trial, the evidence justifies the several judgments, and there is no reversible error in the record. The judgments are affirmed.

*Judgments affirmed.*