Raymond Grant, Plaintiff-Appellant, v. Bernice Paluch and Stanley J. Paluch, d/b/a Lefty's Lounge; Andrew Wantroba and Helen Wantroba, Frances Gall, Adolph Gall and Nicholas G. Parise, a/k/a Nick Paris, d/b/a Ed's Tavern; and Elmhurst National Bank.

Gen. No. 49,573.

First District, Fourth Division.

July 21, 1965.

Heller and Morris, and Jerome H. Torshen, of Chicago (Jerrold L. Morris and Jerome H. Torshen, of counsel), for appellant.

Orner & Wasserman, of Chicago (Norton Wasserman, of counsel), for Frances Gall, Adolph Gall, Nicholas G. Parise a/k/a Nick Paris, d/b/a Ed's Tavern, and Elmhurst National Bank, appellees. Brody & Gore, of Chicago (Robert L. Brody, of counsel), for Bernice Paluch, Stanley Paluch, Andrew Wantroba, and Helen Wantroba, appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken on behalf of plaintiff, Raymond Grant, for and on behalf of Ruth Grant, his wife, individually, and Ruth Grant as mother and next friend of his minor children, Michael Joseph Grant and William Thomas Grant. The case was heard before a judge and jury in the Circuit Court; the jury returned a verdict for the defendants and the court overruled the post-trial motion and entered judgment in accordance with the verdict.

The action was brought by the plaintiff under Chapter 43, Section 135 of Illinois Revised Statutes (1963), known as the Dram Shop Act, to recover damages on behalf of his wife and minor children. In the complaint it was alleged that Raymond Grant, who will hereafter be referred to as the plaintiff, had become intoxicated as a result of alcoholic liquors sold or given to him by the defendants and consumed at their respective places of business. The plaintiff further alleged that by reason of the consumption of the intoxicating liquors he became intoxicated in whole or in part, and that while in that condition he drove his automobile, collided with another automobile, and suffered permanent injuries. It is alleged that because of such injuries he was unable to return to work at his place of employment and his wife and children were injured in their means of support. In this court the plaintiff objects to certain rulings in the trial court which he alleged prevented him from receiving a fair trial: 1) the trial court erred in refusing an instruction to the jury which would define intoxication (the instruction in question was IPI–150.15); 2) the trial court erred in refusing to allow Robert Stevens to testify as a rebuttal witness; 3) the trial court erred in entering an order on motion of defendants to exclude witnesses which excluded the wife of the plaintiff who, it is alleged, is the real party in interest and beneficial plaintiff in this suit; and 4) the trial court

erred in rejecting evidence offered by the plaintiff and in admitting evidence offered by the defendant.

In order to understand the errors urged by the plaintiff it is necessary to consider briefly the plaintiff's evidence appearing in the record. Prior to the accident the plaintiff had worked for a number of years as a foreman at Howard Parlor Furniture Company. Lefty's Lounge, which was owned and run by the Paluchs, defendants, was a tavern across the street from plaintiff's place of employment. The plaintiff went there almost every night after work to wait for a fellow worker to drive him to the train station. The plaintiff testified that on May 10, 1960, the occurrence date, he left work at the usual hour of 4:30 p. m. and went to Lefty's where he met a co-worker, Joseph Bonk. Plaintiff and Bonk stayed at Lefty's for approximately 30 minutes, during which time they each drank three 12-ounce bottles of Hamm's beer. Plaintiff testified that after they finished the first bottle of beer Bonk went to the washroom and that the bartender then gave plaintiff a glass of whisky which he drank quickly so that he could return the glass before Bonk came back. He left after 5:00 p. m. with Bonk and Robert Stevens.

Joseph Bonk testified that he and Grant had entered Lefty's Lounge at approximately 4:25 p. m.; that later Stevens came to the tavern and drove Bonk and Grant to the train station.

The bartender, Frank Rezutka, testified that on May 10 the plaintiff, who was a regular patron, came into the tavern at about 4:15 p. m., or 15 minutes earlier than usual; that he served the plaintiff two bottles of beer; that plaintiff left at about 4:35 p. m., and that neither Bonk nor Stevens was in the Lounge at that time or at any other time that day while plaintiff was there.

The plaintiff said he arrived home at about 7:00 p. m. and had supper. His wife testified that he was in a very happy and jolly mood. The court restricted her examination with reference to the husband's normal attitude towards her. She was asked to describe his attitude towards her that night when he came in at 7 o'clock. She answered that "he was in a very jolly and happy mood, not his usual self, I believe." The latter portion of this answer was stricken.

At about 7:30 Bonk called the plaintiff on the telephone, requesting him to come and look at a sofa which was to be reupholstered. The plaintiff left for Bonk's home over the protestations of his wife. After he left home he stopped at Ed's Tavern, owned and operated by four of the defendants, where he bought two quarts of Drewy's beer. The plaintiff and Bonk both testified that he took the beer to Bonk's home and that they both drank some of the beer in the garage. Bonk stated that each of them drank about six ounces of the beer, and the plaintiff testified that between the two of them they had finished the first bottle and started on the second. Both men then went back to Ed's Tavern, each driving his own car. At the tavern each of them had a glass of draft beer. The plaintiff testified that Bonk went over to the end of the bar to talk to some friends and that in his absence he, the plaintiff, got a drink of whiskey from the bartender which he drank. Plaintiff then left, saying that he intended to pick up some milk for his children.

Nicholas G. Parise, one of the owners and the licensee of Ed's Tavern, testified that he knew both the plaintiff and Bonk and that Bonk was a good customer. He further testified that he saw the plaintiff in the tavern on the night in question; that the plaintiff did not purchase anything; that later in the evening plaintiff came into the tavern with Bonk, when

252

each of the men had a glass of beer; and that plaintiff took one sip from his glass and left.

Shortly after leaving Ed's Tavern the plaintiff was involved in an automobile accident with a car driven by Peter Johnson in which Mrs. Johnson was a passenger. The plaintiff was injured and was taken to the emergency room at Hinsdale Hospital. The attending physician testified that he noticed an odor of alcohol about him. Mrs. Grant came to the hospital about 11:30 or 11:45 p. m., and she also noticed the smell of alcoholic beverages on her husband's breath.

The first objection urged by the plaintiff in this court is that the trial court failed to give a requested instruction. Prior to instructing the jury a conference was held by the court out of the presence of the jury. The plaintiff requested that the court give the following instruction:

> IPI–150.15. "A person is 'intoxicated' when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care."

The defendants objected to the giving of this instruction and the court refused to give it.

▮ The statute gives a right of action to any person injured in person or property by any intoxicated person against the sellers or donors of such liquor, et al., and it further provides for a loss caused by injuries to means of support "caused by an intoxicated person, or in consequence of the intoxication." The entire basis of the lawsuit is "intoxication," although the statute does not define that word. It is common knowledge that there are varied effects of alcoholic liquors upon persons. A very small amount of alcoholic liquor may have a startling effect upon one per-

son, while an extraordinary amount may have very little effect upon another. Nor can it be said that the results upon different persons are always the same. The effect may be different because of the physical condition of the person in question, his consumption of food prior to or after his ingestion of alcoholic liquor, and various other questions. Professor Appleman, in the 1964–65 Supplement of Illinois Dramshop Briefs, on page 11, states that a definition of intoxication must be given by the court to the jury or the jury would otherwise be compelled to determine matters of law.

██ Whether or not a person is intoxicated is a question of fact for the jury but what constitutes intoxication is a question of law to be defined by the court. People v. Schneider, 362 Ill 478, 200 NE 321. In Navarro v. Lerman, 48 Ill App2d 27, 198 NE2d 159, the court said:

> "We hold that an instruction defining intoxication is proper in a dramshop case and we further hold that IPI No. 150.15 is a good definition of a term which is difficult to accurately define."

██ The defendants in the case before us have cited several cases which hold that an instruction should not be given where there is no evidence to support it, but these are not applicable in this action. It is true there have been some decisions in the Illinois courts holding that it is not necessary to give an instruction defining intoxication in a dramshop case, but that the entire question could be left to the jury. However, in the comments following IPI–150.15 the Committee on Jury Instructions of the Illinois Supreme Court stated that although the definition of intoxication had not been passed upon by the courts the Committee felt that the instruction in question correctly stated the law. It was further said in the comments:

"Since intoxication is the crux of a dram shop case just as negligence is the crux of most personal injury suits, it would seem that a definition of intoxication is just as important as a definition of negligence in a civil case."

We accept this proposition and conclude that the trial court was in error in not giving the proffered instruction.

■ The second alleged error of the trial court is its refusal to allow Robert Stevens to testify in rebuttal. Plaintiff had testified to the time of his arrival at Lefty's Lounge; that Bonk was there with him and had drunk with him; and that Robert Stevens came into the tavern while he was still there, all of which was denied by the bartender who testified for the defendants. In rebuttal, the plaintiff tendered Stevens as a witness to testify that he, Stevens, on the night in question had picked up both Bonk and the plaintiff at the tavern, taking them to the train, and that the plaintiff was intoxicated. The defendants objected to this testimony on the ground that Stevens' name had not been listed by the plaintiff in answers to interrogatories theretofore propounded to the plaintiff. Two of the interrogatories asked for the names and addresses of persons having knowledge of "relevant facts" pertaining to the cause of action. Those interrogatories were held improper in Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415. Also see Fedors v. O'Brien, 39 Ill App2d 407, 188 NE2d 739.

■ ■ The other interrogatories asked for the names and addresses of persons who were present or who witnessed the occurrence or who witnessed the gift or sale of intoxicating liquors to the plaintiff in Lefty's Lounge. Under the interrogatories there could be no objection sustained as to the testimony of Stevens even as a witness-in-chief except if he attempted to testify to the sale of intoxicating beverages to the

255

plaintiff. In the instant case there was sworn testimony of the plaintiff and Bonk as to their presence and that of Stevens in Lefty's Lounge on the night of the occurrence. This was categorically denied by the bartender. Under those circumstances, even though the interrogatories were controlling (which in this case they are not), Stevens should have been permitted to testify as to the presence of the plaintiff and Bonk at the tavern and that he picked them up that evening and took them to the train. If the jury had then believed Stevens it could have disregarded the testimony of the bartender in whole or in part. In refusing to admit Stevens as a rebuttal witness the trial court abused its discretion.

The plaintiff also urges that the trial court committed reversible error in excluding from the trial Ruth Grant (the wife of Raymond Grant) who was the real party in interest and beneficial plaintiff. Prior to the introduction of evidence counsel for defendants moved to exclude witnesses, specifically Mrs. Grant, on whose behalf the suit was brought, the action having been brought by Raymond Grant for and on behalf of Ruth Grant, his wife, individually, and as mother and next friend of his minor children, under the provisions of the Dram Shop Act. Under the terms of the Act, Ruth Grant is therefore the real party in interest in this case.

In Elkins v. Kopp, 23 Ill App2d 509, 163 NE2d 212, the court held that under the July 1, 1956, amendment to the Dram Shop Act, a single action was provided for in the name of the injured person (the provider) for the exclusive benefit of the person or persons injured in loss of support, and that

> "the person injured in loss of support is the real person in the suit, *with no substantial interest whatever being in the person injured.* The latter's name is used in order that the action may be

256

maintained by a single representative of the class of persons who qualify as those injured in their means of support.

"It has been held that a party who is entitled to the benefit of the recovery is the real party, and the law gives him the entire control of the process and management of the suit to its termination, and of the judgment, when recovered, and of the process for its enforcement. He has all the substantial and actual rights of a real plaintiff and possesses full power to act as if he were the nominal plaintiff. Weckler Brick Co. v. McLean, 124 Ill App 309."

In Simmons v. Hendricks, 47 Ill App2d 195, 197 NE2d 766, the court set out the purpose of the Dram Shop Act as being one to aid the real parties suffering the loss of support, and in that case the court said: "In effect the intoxicated person is only a nominal plaintiff, and not the party who would directly benefit by the Dram Shop Act."

When the motion was made to exclude witnesses, counsel for the plaintiff objected on the ground that Mrs. Grant was a witness and that she was a party in the case. The court said that if there was a person who was not named as a party in the suit he would advise the plaintiff to put her on as his first witness and then she might stay in court. This plaintiff's counsel chose not to do, and the court entered an order excluding Mrs. Grant.

In Kopplin v. Kopplin, 330 Ill App 211, 71 NE2d 180, the defendant interrupted the testimony of a witness and the trial court ordered her excluded from the court room until such time as she would be required to testify. In that case the Appellate Court stated that the exclusion of a party from the court room during a trial would be repugnant to constitutional provisions.

■■■■■■■■■

In Gross v. Johnson, 248 Ill App 531, the court held
that it was a denial of the defendant's constitutional
right for the trial judge to deprive him of his legal
privilege to be present during the whole of the trial.
Such exclusion would be a denial of due process. In
re Estate of Hoffman, 49 Ill App2d 436, 200 NE2d 37,
the court said:

> "The constitutional guaranty of due process of
> law in its procedural aspect, 'requires that every
> man shall have the protection of his day in court
> and the benefit of the general law, a law which
> hears before it condemns, which proceeds not
> arbitrarily or capriciously but upon inquiry, and
> renders judgment only after trial, so that every
> citizen shall hold his life, liberty, property and
> immunities under the protection of the general
> rules which govern society.' [Citing cases.]"

■■■ In the instant case the defendants argue that
the court, by suggesting that the plaintiff should put
Mrs. Grant on the stand first had obviated any error
in excluding her from the court room. That argument
is not tenable inasmuch as Mrs. Grant, the real party
in interest, had a right to be present in the court during
the entire trial. In such exclusionary order the trial
court erred.

■■■■ It is also argued that the trial court was in
error in certain of its rulings on the admissibility of
proffered evidence. Mrs. Grant had testified that over
the years she had seen quite a few people under the
influence of intoxicating liquor; that when her husband
came home to supper on the night in question he was
in a very happy, jolly mood and smelled heavily from
alcoholic beverages. The court refused to allow her
to testify to the usual personality or attitude of her
husband and also refused to allow her to testify,
basing her experience on her observation of persons

258

under the influence of intoxicating beverages and her observation of the plaintiff when he came home on the night of May 10, as to whether she had an opinion that the plaintiff was or was not "under the influence of intoxicating beverages when he came home that night." It has been repeatedly held in our courts, as the defendants in their brief admit, that a lay witness may express an opinion from experience and observation as to whether or not a person is intoxicated. In Vandeveer v. Preston, 13 Ill App2d 29, 140 NE2d 521, the court said:

". . . A witness may state the fact of intoxication, a fact which may be ascertained as is any other fact by personal observation. City of Aurora v. Hillman, 90 Ill 61. Suppe v. Sako, 311 Ill App 459. For the same reason a witness may state that a person whom he has observed was not intoxicated."

In Dimick v. Downs, 82 Ill 570, a witness was asked whether the plaintiff

"seemed nervous or excited, and whether she was under the influence of liquor; and, also, whether, if she had been under the influence of liquor, he would have noticed it."

The Supreme Court held that such a question was proper and said:

". . . Whether a person is nervous and excited, or calm, or whether drunk or sober, are facts patent to the observation of all, and their comprehension requires no peculiar scientific knowledge. . . ."

Also see Suppe v. Sako, 311 Ill App 459, 36 NE2d 603, in which case the court quoted from City of Aurora v. Hillman, 90 Ill 61:

" ' . . . The details of conduct, attitude, gesture, words, tones, and expression of eye and face may be stated by him, or he may state the fact of intoxication, a fact which he can ascertain by personal observation, as he ascertains other facts.' "

The defendants argue that Mrs. Grant's testimony should not have been admitted since the plaintiff came home about 7:00 p. m. and the accident occurred about 9:45 p. m. Considering the peculiarities of the actions and reactions of alcoholic liquors on various persons, and the fact that after supper the plaintiff continued drinking intoxicating liquors, we think the testimony should have been admitted for the jury's consideration since the jury had to determine the ultimate question of whether at the time of the accident the plaintiff was intoxicated.

 The last objection made to the proceedings in the trial court involved the cross-examination of Mrs. Grant. During that examination she was asked by counsel for defendants whether she received money from a union benefit plan, and the amount received. Counsel for the plaintiff objected; the trial court overruled the objection, and Mrs. Grant testified that she had received a certain percentage of her husband's wages for one year. This evidence should not have been brought before the jury. Mrs. Grant had a right, if she proved her case, to recover for the loss of support caused by the injuries of her husband, without considering whether she might have had means of her own or an income from a source other than her husband. Deel v. Heiligenstein, 244 Ill 239, 91 NE 429 (a dramshop action).

Hudson v. Leverenz, 9 Ill App2d 96, 132 NE2d 427, was a "Dram Shop Case." Suit was brought for the benefit of the wife and her minor children. Her husband was killed in an automobile accident allegedly

caused by the intoxicated driver of another car colliding with the car of plaintiff's husband. In that case it was urged that the trial court erred in excluding evidence of Social Security payments to the plaintiff. The Appellate Court upheld the ruling of the trial court, citing numerous cases, among others, Geary v. Metropolitan St. Ry. Co., 73 App Div 441, 77 NY Supp 54, where the court said:

> " 'The duty of the jury, under the statute, was to ascertain the pecuniary loss which the widow and children sustained by the death of the husband and father, and any benefits which they received by way of insurance or pension are not to be offset or deducted.' "

In Whiteside v. O'Connors, 162 Ill App 108, the court said that the introduction of evidence as to insurance benefits was wholly "incompetent and immaterial, and its admission was manifestly prejudicial to the plaintiff in error."

██ ██ It is elementary learning that both parties in the trial of a lawsuit are entitled to a fair trial. The defendants contend that even if the rulings of the court were not proper they were not so prejudicial as to require a reversal. It is not necessary for us to make a determination as to whether any one of the erroneous rulings of the court standing alone would be so prejudicial as to require a reversal. It is sufficient for us to say that in the instant case the erroneous rulings of the trial court were sufficient to deprive the plaintiff of a fair trial.

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

DRUCKER and ENGLISH, JJ., concur.