**James Lee Bass and Ellis Bass, Jr., Plaintiffs-Appellees, v. Rothschild Liquor Stores, Inc., a Corporation; Paulina Liquors, Inc., Now Known as Harvest Liquors, Inc., a Corporation, Defendants-Appellants.**

**Gen. No. 51,136.**

First District, Third Division.

October 19, 1967.

J. Richard Stanton and Jones & Clark, of Chicago (Vincent M. Clark, of counsel), for appellants.

Herbert A. Ellis, Arthur Aaron Ellis, and Morris W. Ellis (Ellis and Ellis, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal by Paulina Liquors, Inc., from an adverse judgment in an action brought under the Dram Shop Act (Ill Rev Stats, c 43, § 135 (1957)). Harvest Liquors, Inc., is the name to which Paulina Liquors was subsequently changed, the corporation otherwise remaining the same. Rothschild Liquor Stores, named in the complaint, is not involved in this appeal. The appeal centers upon two issues: whether the evidence established a cause of action against the defendant under the statute and whether the conduct and arguments of the plaintiffs' attorney deprived the defendant of a fair trial.

The case grows out of an automobile accident which occurred on March 7, 1958, near the intersection of Adams Street and Western Avenue in Chicago. The plaintiffs, brothers, were passengers in an automobile which struck a tree, killing the driver, Paul Johnson, and injuring them. The liability of the defendant is predicated upon its having sold or given intoxicating liquor to Johnson, thereby causing or contributing to his intoxication and ultimately causing or contributing to his inability to control the automobile.

■■ Liability under the Dram Shop Act is imposed when the evidence proves that the defendant dramshop keeper sold or gave alcoholic beverages which contributed to the intoxication of a third party and that his intoxication caused the injury complained of. Danhof v. Osborne, 11 Ill2d 77, 142 NE2d 20 (1957); Dunkelberger v. Hopkins, 51 Ill App2d 205, 200 NE2d 905 (1964). A person

414

is intoxicated when, due to his consumption of alcoholic liquor, there is an impairment of his mental or physical faculties and a resultant diminution of his ability to think and act with ordinary care. Navarro v. Lerman, 48 Ill App2d 27, 198 NE2d 159 (1964).

The defendant first contends that the trial court erred in refusing to direct a verdict against the plaintiffs and that the jury's verdict was contrary to the manifest weight of the evidence because there was insufficient proof that it sold or gave alcoholic liquor to Johnson.

Ellis Bass testified that Johnson drove him and his brother James to the wake of a friend. When they left the funeral parlor Johnson, who was sober and had not been drinking, drove them and two other friends to the corner of Paulina Avenue and Madison Street and stopped on Paulina across the street from the defendant's store. He went into the store and Ellis, from his position in the car, observed the bartender reach over and give him something and saw Johnson "standing over the bar drinking; he had a half pint. . . . [H]e was drinking out of the bottle." Fifteen or twenty minutes after Johnson entered the store, James Bass and one of the other passengers got out of the car to bring him back. Johnson did not appear to be intoxicated at that time but Ellis, who was sitting next to him, smelled whiskey on his breath. Johnson drove south on Paulina, made a "wobbly" turn west on Adams, accelerated to a speed in excess of 80 miles an hour and then hit a tree on the southwest corner of Adams and Western. It was Ellis' opinion that Johnson was drunk before he lost control of the vehicle. This narration of events was substantially corroborated by James Bass. Further support for it was given by testimony of an assistant from the City Clerk's office that on March 7th the defendant was licensed to operate a tavern, a package liquor store or a combination of both. In addition, the police officer who investigated the accident

testified that the steering wheel was pushed back against Johnson's chest, his mouth was open and there was a strong odor of alcohol on him.

The plaintiffs' version of how Johnson came to be intoxicated was sharply controverted. The defendant's manager and a clerk testified that after August, 1957, no alcoholic liquor was served on the premises and there was a definite policy against drinking in the store. Samuel Rothschild, who testified for the plaintiffs as well as for the defendant, stated that he was an agent for the defendant and that in March of 1958 it did not serve intoxicating beverages for consumption on the premises. An investigator employed by the defendant testified that he interviewed the plaintiffs, wrote down their statements and saw them sign their names on each page. Both statements described the plaintiffs' activities from early evening on March 7th till the accident and did not mention Johnson's drinking at the defendant's store. Ellis admitted drinking a half pint of whiskey with Johnson before going to the funeral home and falling asleep on the way home. He and James both acknowledged that Johnson was not intoxicated at the time of the accident. (The plaintiffs denied making the statements but agreed that their signatures were upon them.) The court reporter who attended the coroner's inquest into Johnson's death read the testimony of Ellis and James which in some ways corroborated the statements taken by the investigator.

The defendant also denied that the plaintiffs were able to see into its store. The manager, the clerk and Rothschild stated that on March 7th the windows of the stores were entirely covered with signs and that a partition behind the windows prevented anyone on the street from looking into the store.

 The test to be applied in ruling upon a motion for a directed verdict is whether there is any evidence, or reasonable inference arising from the evidence, which tends to prove the material allegations of the non-moving

416

party's case. In determining whether there is such evidence, the weight and credibility of the evidence are not material, for the question is whether the party opposing the motion has as a matter of law failed to sustain the elements of his case. Mesich v. Austin, 70 Ill App2d 334, 217 NE2d 574 (1966). A verdict should not be directed if there is evidence supporting the opposite party's case except in those rare cases in which all the evidence, when viewed in its aspect most favorable to the opposite party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504 (1967). Applying this test to the evidence, it is obvious that the trial court properly refused to direct a verdict.

■■ The findings of a jury will not be set aside as being against the manifest weight of the evidence unless it appears they are clearly and palpably lacking evidentiary support. Tihay v. Aurora City Lines, 79 Ill App2d 107, 223 NE2d 171 (1967). Especially is this so where, as in the case at bar, there are conflicts in the evidence. Klinkenberg v. Horton, 81 Ill App2d 152, 224 NE2d 597 (1967). Although there was evidence tending to exculpate the defendant, there was also evidence that Johnson was sober when he entered the defendant's store, that the defendant's license authorized it to sell alcoholic liquor for consumption on the premises, that a bartender reached over the bar and gave Johnson something, that Johnson stood at the bar and drank from a half-pint bottle, that he had whiskey on his breath when he came out of the store 15 minutes later, that he drove in an unsteady fashion before the collision and that he accelerated to a high speed just prior to the impact. This testimony supports the jury's verdict, and it cannot be said that an opposite verdict was clearly warranted.

■ The second contention on appeal is that the conduct and argument of the plaintiffs' attorney deprived the defendant of a fair trial. One instance occurred during

final argument. Although there was no testimony about the illumination inside or outside the store, the plaintiffs' attorney referred to the store as being "lit up like a Christmas tree" and said it "has got [sic] flood lights all over the place. . . ." In the defendant's brief other instances of alleged misconduct and prejudicial argument are set forth. However, in its written post-trial motion the defendant specified only the occurrence just mentioned. The incidents not included in the motion are deemed to be waived, for it is unfair to charge the trial court with error without having brought the alleged errors to the court's attention so that a new trial could have been granted had the court found it advisable. Ill Rev Stats, c 110, § 68.1(2) (1965) ; Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209 (1960).

 In his closing argument the defendant's attorney said that the darkness of the night would have made it impossible for the plaintiffs to see into the store. Several other times he referred to the plaintiffs looking "in the dark." These comments were not based on the evidence. In rebuttal the plaintiffs' attorney made the point that a person looking from a dark place can see into a lighted place and he then made the statements complained of. The defendant's attorney replied that there was no testimony that the lights were on, and the trial court said "Yes, Counsel." Since to some extent the remarks of the defendants' attorney provoked the argument, and the trial court expressed his agreement with defense counsel that the argument was not substantiated by the evidence, the prejudicial effect of the argument was minimal and could not have prevented the jury from fairly considering the issues before it.

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.