*In re* Estate of NANCY GERTRUDE MILLIGAN, Deceased.—(HOWARD H. SALVETER *et al.*, Petitioners-Appellants, *v.* LILLIAN MILLIGAN SMITH *et al.*, Respondents-Appellees.)

(No. 69-161; ▮▮▮▮▮▮▮

Fifth District—February 15, 1972.

Murray & Lackey, of Centralia, (George C. Lackey, of counsel,) for appellants.

Wham & Wham, of Centralia, (John P. Wham and Robert H. Rath, of counsel,) for appellees.

Mr. JUSTICE VERTICCHIO delivered the opinion of the courts:

The plaintiffs, Howard H. Salveter and Robert D. Salveter, nephews and sole heirs at law of Nancy Gertrude Milligan, deceased, appeal from a decree of the circuit court of Marion County that directed a verdict at the close of the plaintiffs' case and declared a certain instrument to be the last will and testament of Nancy Gertrude Milligan, deceased.

The plaintiffs, sons of a predeceased sister, Maud, filed their complaint in the circuit court of Marion County, praying that the instrument admitted to probate as the last will and testament of Nancy Gertrude Milligan be set aside.

The defendants are executor Lillian Milligan Smith, and the legatees thereunder, Lillian Milligan Smith, Milton Milligan, Lela Milligan, Mrs. Howard H. Salveter and Mrs. Robert D. Salveter.

The complaint alleged that at the time of the execution of the instrument Nancy Gertrude Milligan was of unsound mind and memory· and mentally incapable of making a will.

Nancy Gertrude Milligan died February 22, 1967, and had executed the instrument purporting to be her last will and testament on June 22, 1962. The terms of the said instrument provided the following devises and bequests:

$1,000.00 to a brother, W. E. Milligan; to a sister-in-law, Lela Milligan; to Mr. and Mrs. Robert Dickinson Salveter; the sum of $2,000.00 to Mr. and Mrs. Howard Holmes Salveter; and the residue of the

estate, three-fourths to a cousin, Lillian Milligan Smith, and one-fourth to a cousin, Milton Milligan.

The issue presented in this appeal is whether the plaintiffs adduced any evidence fairly tending to prove the lack of testamentary capacity of the testatrix.

The plaintiffs presented three lay witnesses. The first witness, James Milligan, Carbondale, Illinois, age ninety, three years older than the testatrix, who was his cousin, testified that he had been acquainted with the testatrix since childhood. He further stated that the testatrix, a spinster; grew up in Pinckneyville, Illinois, and left for California when she was seventeen or eighteen years of age.

He outlined the testatrix's educational and teaching experience in California and at Columbia University in New York. He saw the testatrix on one occasion after she left Pinckneyville while she was visiting in Carbondale and came to his home. The next time he saw the testatrix was after she returned to Illinois on an occasion that Lillian Smith brought the testatrix to his sister's home. He testified that the testatrix did not recognize him and that he assisted her into his sister's home.

He next saw her in the Jackson County Nursing Home while she was occupying a room in the nursing home across the hall from his sister. He visited his sister daily and observed the testatrix for several weeks. He further stated that during these visits the nurses had difficulty in keeping the testatrix out of his sister's room. He noted that she would come out of her room undressed, go into the rooms of others, and would be returned to her room by a nurse. He attempted to have conversations with her and almost each time he had to tell her who he was as she did not recognize him. He did not remember the exact dates that he saw the testatrix, but stated it was before June 22, 1962.

In answer to questions attempting to fix the dates that he saw the testatrix, the witness stated, "I don't know the exact date," but indicated that his sister died in 1963.

In response to an inquiry he stated that in his opinion she was mentally deranged.

The second lay witness, Alma Milligan, the wife of James Milligan, stated that while visiting her sister-in-law in the nursing home at Jackson County, she observed the testatrix.

The witness and her daughter visited the testatrix in her room and each time they told her who they were. The testatrix appeared to believe that her daughter was a student of the testatrix. During the visit the testatrix talked about teaching and was interested in her daughter's grammar and whether pronounced correctly.

Also, the witness saw her outside the room from time to time. The testatrix talked about flowers. She saw the testatrix for a period of about three months in the summer and during that time her conversations were limited to school work and teaching and did not at any time include any current events. In her opinion the testatrix was confused as she would not recognize them from time to time and she would repeat herself.

In answer to questions in cross-examination, the witness was unable to establish whether it was the year '62 or '63. In answer to the following questions, she stated:

"Q. Do you remember whether you did see Nancy Gertrude Milligan in June of 1962?

A. Yes. I told you before, I don't know the exact dates—the exact years.

Q. You wouldn't know whether you did see her during that month or not, would you?

A. Yes, my sister-in-law and I saw her, yes.

Q. You don't know if she was in there or not?

A. I don't know what year Gertrude came, I've forgotten. As I told you before. I don't remember dates too well.

Q. And you judge your sister-in-law was there in 1963?

A. Well, yes.

Q. You don't know whether Nancy Gertrude Milligan—if you saw her at all in June of 1962, do you?

A. Yes—well, I must have. If she was there, I must be mistaken what time she was across the hall. If she was there in 1962, then Alice was too.

Q. You don't have an independent recollection of June 22, 1962?

A. No, not a date like that.

Q. Or any special week, do you?

A. No, we went every week.

Q. And you don't know whether your sister-in-law, Alice, was occupying the room across the hall from Nancy Gertrude Milligan in June of 1962 or not, do you?

A. Well, as I said, I'm not sure about the dates every time."

The third witness, Jennie Dean, an employee of the nursing home, made entries on the nursing home records on May 21, 1962, and July 5, 1962, that the testatrix was confused. She also testified that the testatrix would wander in patients' rooms and pick up things that did not belong to her. She worked in other wings of the nursing home, but was on the wing where the testatrix was a patient on May 21, 1962,

and on July 5, 1962, for eight-hour shifts from 3:00 P.M., to 11:00 P.M. She stated that in her opinion the testatrix "was off a little bit."

The plaintiffs introduced a letter of the defendant, Lillian J. Smith, dated August 23, 1961, and addressed to Lela Milligan, sister-in-law of the testatrix. The said letter included the following statements:

"Things are bad here and Gertrude—she's very confused. We're having a time getting her ready to bring back, but she has agreed to come back to Illinois with me—."

The issues are:

1. Was the evidence related in time to the execution of the purported will?

2. Did the evidence in favor of the contestants, together with the inferences therefrom, prove the plaintiffs' case?

The defendants in their brief limit their arguments to:

1. Was the evidence related in time to the execution of the will?

2. The scintilla of evidence rule.

■■ A review of the testimony of James Milligan and Alma Milligan establishes that neither related their testimony to June 22, 1962, the date the will was executed. It is recognized that a non-expert may give his opinion as to the mental condition of the testatrix for a reasonable time before and after making the will. Such proof, to be competent, must relate to a time at or near the time of making of a will. Evidence of mental condition at other times, unless it fairly tends to show the condition of the testatrix at the time the will was executed, is wholly inconsequential. Until the non-expert witness has related the facts and circumstances to the time of the execution of the will, his opinion is of no value and should not be admitted into evidence. *Shevlin v. Jackson,* 5 Ill.2d 43; *Peters v. Catt,* 15 Ill.2d 255.

■■ The defendants moved at the close of the testimony of the witness James Milligan to exclude his testimony on the grounds that it was not related to the date of the execution of the will. The court erred in denying the motion to exclude the testimony of James Milligan as it was unrelated to the date of the purported will and therefore incompetent.

■■ As to the testimony of Alma Milligan, it is noted that the defendants did not make a motion at the close of her testimony to strike her testimony. Thus, this Court is confronted with the problem of determining whether the testimony of Alma Milligan should be considered. The law presumes every man to be sane until the contrary is proved, and the burden rests upon the party who asserts the lack of testamentary capacity. (*Lewis v. Deamude,* 376 Ill. 219.) The evidence of Alma Milligan is not related to the date of the execution of the will and does not have sufficient force to overcome the presumption of sanity,

even though admitted into evidence. *Logsdon v. Logsdon,* 412 Ill. 19, page 23.

■■ As to the testimony of Jennie Dean, is that testimony, standing alone, sufficient to show a lack of testamentary capacity? The testimony relates to entries in the nursing home records on May 21st and July 5th stating that the testatrix was confused. The balance of her testimony relates to the conduct of the testatrix on the said dates between the hours of 3:00 P.M., and 11:00 P.M. Jennie Dean's testimony is the plaintiffs' only competent evidence with all of its logical intendments that indicates that Nancy Gertrude Milligan, the testatrix, was lacking in testamentary capacity on the date she executed this will and amounts only to a bare *scintilla* of evidence in support of plaintiffs' cause.

The letter of the defendant Lillian Smith does not add any probative value to the contentions of the plaintiffs.

■■■ The legal principles under which a will must be decided are well settled. A motion for a directed verdict in a will contest is governed by the same rules which apply to actions of law and if there is no such evidence, the motion should be allowed. (*Metzger v. Mowe,* 8 Ill.2d 274, page 279.) The contestants are entitled to the benefit of all the evidence considered in its aspects most favorable to them together with the intendments and inferences to be drawn therefrom. Thus, the only question on review is whether there is any evidence tending to prove the allegations in the complaint. The plaintiffs argue properly that neither the trial court nor this Court may weigh the evidence on a motion for directed verdict, but if no evidence is introduced tending to prove the allegations of the complaint or if but a bare scintilla of evidence has been adduced, the court should grant a motion for a directed verdict. This Court has herein indicated that the testimony of James Milligan and Alma Milligan was incompetent as it did not relate to the date of the execution of the will. As to the testimony of Jennie Dean, at best, with all inferences and intendments, it constitutes a bare scintilla of evidence.

The trial court, therefore, was correct in granting defendants' motion for a directed verdict.

As to the arguments directed to the alleged indiscretions of the court in stating:

1. "I think a good deal of credence must be given to the testimony of witnesses when the will was admitted to probate, —."

2. Stating "The court is persuaded there was something else going through Mr. Milligan's mind as he testified,"

it is the Court's opinion that these two statements are not relevant to the issues.

A reveiwing court is concerned with the results reached and not the reasons assigned.

Decree of Marion County circuit court is therefore affirmed.

Decree affirmed.

MORAN, P. J., and EBERSPACHER, J., concur.