Morris Weiner, Ex'r of the Estate of Ada Weiner, Deceased, *et al.*, Plaintiffs-Appellants, *v.* Joseph A Trasatti, d/b/a New Elms Restaurant, *et al.*, Defendants-Appellees.

(No. 57608;

First District (2nd Division)—April 16, 1974.

Kamin, Stanley & Balkin, of Chicago (Frank C. Stanley, of counsel), for appellants.

Heineke, Schrader & Cuncannan, of Chicago (Paul H. Heineke, of counsel), for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

■■ This is an appeal from a judgment entered after a verdict directed in favor of defendants. Morris Weiner, executor of the estate of Ada Weiner, deceased, for his benefit and for the benefit of Stewart Weiner, a minor; Fred Weiner, the adult son of Ada and Morris Weiner, filed a suit under the dram shop act[1] against Joseph Trasatti, owner of a restaurant in Northbrook, Illinois; Ben Weber and Vera Weber, owners of the building where the restaurant was located, to recover for loss of support which plaintiffs allegedly incurred when Ada Weiner was struck and killed by an automobile driven by one Richard Buckman who, it was alleged, became intoxicated, in whole or in part, by beer he purchased and consumed in the restaurant. Defendants appeared, demanded a jury, answered the complaint and denied its material allegations. Thereafter the case went to trial, and plaintiffs called as their witnesses Robert Buckman, Thomas Cunningham, Buckman's passenger when Ada Weiner was killed, and Morris Weiner. At the close of plaintiff's case, defendants moved for a directed verdict. The trial court granted the motion. The principal issue in this appeal is whether grant of this motion was error. Its resolution requires us to determine whether all of the evidence, when viewed in its aspect most favorable to the plaintiffs, so overwhelmingly favored defendants that no contrary verdict could ever stand. (*Neubauer v. Coca Cola Bottling Co.*, 96 Ill.App.2d 18, 238 N.E.2d 437.) To make this determination, we look at the evidence as it appears most favorably to the plaintiffs, together with all reasonable inferences construed most strongly in their favor, rejecting all contrary or explanatory circumstances. (See *In re Estate of Milligan*, 4 Ill.App.3d 38, 280 N.E.2d 244.) From this view, it appears that the following are the facts.

I.

At about 12:15 A.M. on April 2, 1967, Richard Buckman and Thomas Cunningham entered the New Elms Restaurant in Northbrook, Illinois.

---

[1] Ill. Rev. Stat. 1965, ch. 43, par. 135.

"Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; and any person owning, renting, leasing or permitting the occupation of any building or premises and having knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving liquors aforesaid, * * *. An action shall lie for injuries to means of support, caused by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, resulting as aforesaid."

They remained there until 1:15 or 1:30 A.M., and during that time each purchased and consumed two 12-ounce bottles of beer. When they left, Buckman drove his automobile with Cunningham on the passenger side of the front seat. It was Buckman's intention to take Cunningham to his home at 7422 North Oakley Avenue in Chicago. About 15 minutes after they started the drive, Cunningham fell asleep. However, before doing so, he saw nothing unusual in Buckman's behavior nor in the way he was driving. Cunningham was of the opinion that Buckman was sober.

Buckman was a meat cutter who worked for a large Chicagoland food store. He was a young man about 5 feet 9 inches tall and weighed 150 pounds. He was in good health, and on the day in question had not taken any medication. From the New Elms Restaurant, he drove approximately 11 miles to the intersection of McCormick Boulevard and Howard, the street that is the northern boundary of the city of Chicago and separates that municipality from the city of Evanston. In driving that distance, Buckman, without incident, passed 16 to 17 stoplights. In his opinion, he was sober. However, while driving to McCormick Boulevard and Howard, he began feeling tired. Concerning this feeling, Buckman testified that he did not believe it was caused by the "two beers" he consumed in the restaurant. Nonetheless, from McCormick Boulevard, Buckman continued driving east on Howard; and for 1 mile, he had no recollection of what occurred. He recalled crossing a sewerage canal as he proceeded east, but could recall nothing else.

One mile from McCormick Boulevard (it was then about 2:02 A.M. on April 2) at 2841 W. Howard, Ada Weiner was standing near the rear of a truck properly parked on the south side of the street, facing east. Buckman drove his automobile into the parked truck striking and killing her. She was then 46 years of age, in good health; the wife of Morris Weiner and the mother of Stewart and Fred Weiner. For 4 years prior to her death, she was employed by the American Photocopy Company, and in addition worked with her husband in furthering the business of Ada's Fishery and Delicatessen, a corporation whose stock was owned by them. She was thus engaged when she was killed.

## II.

■■ In their suit under the dram shop act for injury to their means of support by Richard Buckman, an intoxicated person, plaintiffs, to present a jury question, had the burden of producing evidence which would prove that (1) they were injured in their means of support (2) by Buckman, an intoxicated person who (3) was given or sold intoxicating liquor by the defendants, which gift or sale caused, in whole or in

part, the intoxication. (See *Baker v. Sauber*, 62 Ill.App.2d 66, 210 N.E.2d 223; *Kirlluk v. Cohn*, 16 Ill.App.2d 385, 148 N.E.2d 607; Ill. Rev. Stat. 1965, ch. 43, par. 135; I.P.I.2d 150.05.) Whether Buckman was intoxicated when he drove his automobile into Ada Weiner, was a question of fact for the jury; but what constituted intoxication was a question of law to be defined by the court. (*Grant v. Paluch*, 61 Ill.App.2d 247, 254, 210 N.E. 2d 35; *People v. Schneider*, 362 Ill. 478, 200 N.E. 321.) In formulating the applicable definition of intoxication, the trial court was bound to tell the jury that "[a] person is 'intoxicated' when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care." *Navarro v. Lerman*, 48 Ill.App.2d 27, 31, 198 N.E. 2d 159, citing I.P.I. 2d 150.15; *Bass v. Rothschild Liquor Stores, Inc.*, 88 Ill.App.2d 411, 232 N.E.2d 19.

■■ It is generally said that proof of intoxication in a dram shop suit requires evidence which establishes that the person involved was in fact intoxicated. It is not enough that the evidence prove only that the alleged intoxicated person consumed alcohol. "A jury verdict under such circumstances would be based on pure conjecture since each individual's capacity for alcoholic intake varies; therefore, a jury question as to intoxication is not made out by merely proving that one had consumed alcohol." (*Felker v. Bartelme*, 124 Ill.App.2d 43, 48, 260 N.E. 2d 74.) However, evidence that the alleged intoxicated person consumed alcoholic liquor, together with evidence of unusual behavior or opinion evidence that he was drunk, would entitle a jury, under such circumstances, to conclude that the person was intoxicated. *Felker v. Bartelme*, 124 Ill.App.2d 43, 47, 260 N.E. 2d 74.

■■ For example, in *Matkins v. Fenorsky*, 348 Ill.App. 125, 108 N.E. 2d 373, the court had before it a case in which there was evidence that the alleged intoxicated person felt "groggy" after leaving a tavern in which he drank alcoholic liquor; that he moved slowly and felt heavy, conditions he had not experienced before drinking. The court held that the groggy condition which continued up to the time of the accident in question was sufficient to allow the case to go to the jury on the issue of intoxication. In *Wilson v. Parker*, 132 Ill.App.2d 5, 269 N.E.2d 523, there was proof that an alleged intoxicated person consumed "four or five beers," and concerning his conduct a fellow passenger had said he was not "really drunk where he did not know what he was doing." It was held that the evidence created a jury question whether the person was intoxicated. In all instances of this kind, therefore, the crucial inquiry is whether consumption of intoxicating liquor, together with evidence of unusual behavior, shows that as a result of drinking alcoholic

liquor there was an impairment of mental or physical capabilities that diminished the person's ability to act with ordinary care. *French v. City of Springfield,* 5 Ill.App.3d 368, 376, 283 N.E.2d 18; I.P.I.2d 150.15.

■■ In this case, if both sides had rested when plaintiffs closed their proof, the jury could have found that in the early morning hours of April 2, 1967, Richard Buckman purchased and consumed alcoholic liquor in a restaurant owned by Joseph Trasatti and maintained by him on premises that belonged to the defendants Ben and Vera Weber. Buckman was then in good health; he had not taken any medication that day nor was there anything, other than his consumption of alcoholic liquor, that could have impaired his mental or physical faculties and thus diminish his ability to drive his automobile with ordinary care. The jury could also have found that after Buckman consumed the alcoholic liquor, he drove his automobile a distance of eleven miles through sixteen or seventeen stoplights without incident, to the intersection of McCormick Boulevard and Howard Street in Chicago; that while driving that distance, he began getting tired; that although he could remember what happened up to McCormick Boulevard, Buckman could recall nothing after he crossed a sewerage canal at that point; and that, without explanation for his erratic driving, he went an additional mile and plowed into the rear of a properly parked truck, killing Ada Weiner. This being the evidence, the question which arises is whether, at the close of plaintiffs' case, the jury could have found that when Buckman struck and killed Ada Weiner with his automobile, he was intoxicated. We believe it could have done so. It was for the jury to decide whether at the time of the accident Buckman was intoxicated, and that his intoxication was caused by the alcoholic liquor he drank in the New Elms Restaurant. See *Suppe v. Sako,* 311 Ill.App. 459, 36 N.E.2d 603; compare *Hurley v. Phillips,* 54 Ill.App.2d 386, 203 N.E.2d 431.

### III.

■■ It was also for the jury to determine whether Ada Weiner was a means of support to her husband and whether Buckman's intoxication was the proximate cause of Morris Weiner's loss of that support. (*Casey v. Burns,* 7 Ill.App.2d 316, 322, 129 N.E.2d 440.) The statute that plaintiffs invoked gave them a cause of action for injuries which an intoxicated person caused to their means of support. It provided for recovery for loss of means of support resulting from the death or injury of any person. (Ill. Rev. Stat. 1965, ch. 43, par. 135.) Loss of means of support includes loss of income which results from termination of voluntary contributions. *Lowrey v. Malkowski,* 23 Ill.App.2d 371, 163 N.E.2d 528; I.L.P. Liquor §155.

■■ Plaintiffs contend that when they attempted to discharge their burden of proof on the issue of loss of means of support by Morris Weiner, they were unduly restricted by the rulings of the trial court which sustained objections to questions asked by their counsel. We agree with this contention. Without detailing the numerous rulings that sustained defendants' objections to questions asked, we think it sufficient to say that our rules of procedure envision a greater leniency in permissible questioning than is evidenced in the record of this case. Although regulation of direct examination of witnesses is largely a matter left to the sound discretion of the trial judge, that discretion should not be exercised in a way that will inhibit a party from effectively presenting his cause to the jury. (See *Teti v. Firestone Tire and Rubber Co.* (6th Cir. 1968), 392 F.2d 294.) It is elementary that evidence of Ada Weiner's income, the disposition of that income with relation to her husband Morris, what she did with it and whether she supported any of the plaintiffs were relevant to the issue of loss of means of support, an important element in a cause of action under the dram shop act. (Compare *Nagle v. Keller*, 141 Ill.App. 444; see *Hettinger v. Beiler*, 54 Ill.App. 320.) Therefore, we conclude that the trial court rulings which excluded much of plaintiffs' evidence on the issue of loss of support was error.

■■■ Despite these exclusions, plaintiffs, in our judgment, introduced evidence from which the jury could find that Morris Weiner suffered loss of means of support when his wife Ada was killed. For example, plaintiffs proved that until her death, Ada Weiner was employed by the American Photocopy Company and worked with her husband in furthering their delicatessen business which they maintained at two addresses. From the testimony that Morris Weiner was permitted to give, it appears that Ada was a wage earner who lived with him and supported him in his business endeavors. Means of support include all those resources from which the necessities and comforts of living are or may be supplied. (*Meidel v. Anthis*, 71 Ill. 241; *McMahon v. Sankey*, 133 Ill. 636, 24 N.E. 1027.) The capacity for providing means of support may be shown by proof of earnings and contribution of services or income. (See *Robertson v. White*, 11 Ill.App.2d 177, 181, 136 N.E.2d 550; 48 C.J.S. Intoxicating Liquors §437; compare *Edenburn v. Riggins*, 13 Ill.App.3d 830, 836, 301 N.E.2d 132.) The services of a wife to which a husband is entitled include those rendered by the wife in performance of her household and domestic duties, as well as those rendered by her while assisting the husband in his business. (*Collier v. Collier* (1943), 182 Md. 82, 32 A.2d 469, citing C. J. *Husband and Wife* §36.) A wife is a source of "* * * services, consortium and means of support."

(*Beck v. Groe* (1955), 245 Minn. 28, 36, 70 N.W.2d 886; Annot., 4 A.L.R.3d 1332, 1381.) Therefore, the question is whether, on the evidence before the jury when plaintiffs rested their case, would a verdict in their favor ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504.) In our judgment it would. For this reason, the trial court erred when it sustained defendants' motion for a directed verdict. (*Felker v. Bartelme*, 124 Ill.App.2d 43, 260 N.E.2d 74.) The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

HAYES, P. J., and STAMOS, J., concur.