Harold Wright, Plaintiff-Appellant, v. Massey-Harris, Incorporated, and Massey-Ferguson, Incorporated, Defendants-Appellees.

Gen. No. 65–55.

Fifth District.

March 10, 1966.

Hanagan & Dousman, of Mt. Vernon, for appellant.

John E. Jacobsen, Craig & Craig, of Mt. Vernon, for appellees.

MORAN, J.

The plaintiff, Harold Wright, a farm employee, brought an action against the defendant, Massey-Ferguson, Incorporated, to recover for personal injuries sustained while operating a self-propelled corn picker. The defendant's motion to dismiss the complaint was allowed. The plaintiff elected to abide by his amended complaint and the court entered a final judgment of dismissal. The plaintiff appeals from that judgment:

The complaint alleges:

"(4) That at the time of the occurrence hereinafter complained of, and immediately prior thereto, plaintiff was using and operating a 1953 Massey-Harris self-propelled six cylinder cornpicker in the usual and customary way in a certain corn field, in Wabash County, Illinois, which his employer, Bernard Walters, farmed, and plaintiff was exercising ordinary care and caution for his own safety, and was not guilty of any negligent act or omission directly and proximately resulting in the injurious occurrence herein mentioned.

"(5) That in the year 1953, Massey-Harris, Incorporated, now known as Massey-Ferguson, Incorporated, through its dealer, John Heiser Implement Company of Princeton, Indiana, sold said cornpicker being a 1953 Model Massey-Harris self-propelled six cylinder cornpicker, to Bernard Walters, when they knew that said cornpicker would be used in the State of Illinois by the plaintiff or other employees of Bernard Walters.

"(6) That the defendant, Massey-Harris, Incorporated, and Massey-Ferguson, Incorporated, by its agents and employees prior to such sale, had negligently designed and manufactured said self-propelled cornpicker in such manner that it was dangerously

71

defective and faulty, and unfit for the purpose for which it was intended, and that the aforesaid machinery did not have thereto attached a reasonably safe shield over the area where corn ears would jam into the chain mechanism, nor over the shucking rollers under the area where jammed corn ears must be manually extracted, and that defendant, Massey-Harris, Incorporated and Massey-Ferguson, Incorporated, by its agents and employees and dealers, then and there negligently delivered said defective, faulty, unsafe and unfit 1953 self-propelled cornpicker which was then sold to Bernard Walters for use by his employees.

"(7) That defendant, Massey-Harris, Incorporated, and Massey-Ferguson, Incorporated, by its agents, employees and dealers, then and there knew or in the exercise of reasonable care should have known that said machine, with the absence of said shield or guard over the shucking rollers above which jammed corn ears would be manually extracted, was thereby defective, faulty, unfit and unsafe as aforesaid, and that plaintiff or any other person using said machine might or would be seriously injured thereby, but said defect and danger was not appreciated nor evident upon an inspection of said chain and shucking roller and the danger was not appreciated by the plaintiff in his use of the defective machinery.

"(8) That on November 8, 1962, at approximately 11:00 a. m., and immediately prior thereto, plaintiff was using and operating said 1953 Massey-Harris self-propelled cornpicker in a certain corn field while in the employment of Bernard Walters, and as a direct and proximate result of the aforesaid negligent design, manufacture, sale and delivery of said cornpicker, plaintiff's right hand and glove, while cleaning out a jammed ear of corn was caught in the

72

shucking rollers and was drawn into and through said shucking rollers past his right wrist, thereby greatly injuring plaintiff as herein alleged."

Defendant claims that the foregoing complaint does not state a cause of action because (1) there are no facts alleged sufficient to show that the machine in question was inherently dangerous when put to the use for which it was intended, and (2) the complaint fails to allege facts sufficient to demonstrate that there was any hidden or latent defect in them, but on the contrary, the complaint shows that the danger would be obvious to anyone placing his hands in the corn husking rollers while the machine was in operation and the complaint therefore shows on its face that there is no liability to the plaintiff for the occurrence alleged.

While this cause was pending in this court, the Supreme Court of Illinois rendered a landmark decision in the case of Suvada v. White Motor Co., et al., 32 Ill2d 612, 210 NE2d 182, in which it not only shattered the privity defense in Illinois in actions against manufacturers, sellers, contractors, those who hold themselves out to be manufacturers, assemblers of parts, suppliers and manufacturers of component parts, but also held these same parties to strict privity-free liability for any injury or damage caused by any unreasonably dangerous products which one or all of them might place into the stream of commerce.

The Court based its holding solely on the same public policy which had heretofore motivated the Illinois Courts to impose strict liability on the sellers and manufacturers of food, saying at page 619:

". . . Without extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present

73

and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases."

The Supreme Court traced the history of products liability law in Illinois and the various extensions of that law leading up to its decision. It discussed Rotche v. Buick Motor Co., 358 Ill 507, 193 NE 529, and MacPherson v. Buick Motor Co., 217 NY 382, 111 NE 1050, which had adopted the concept "that any article negligently manufactured which is reasonably certain to place life and limb in peril is a thing of danger," and said also at page 616, 617:

"... Implicit in Lindroth v. Walgreen Co., 407 Ill 121, was the view that the general rule, rather than the exception to a so-called 'general rule,' is that a manufacturer may be liable for injuries to a person not in privity with him and that such liability is governed by the same principles governing any action for negligence."

It recognized that public policy was the primary factor for imposing strict liability on the seller and manufacturer of food in favor of the injured consumer, and that implicit in the reasoning of the cases imposing strict liability is that "liability is imposed by law and the refusal to permit the manufacturer to define the scope of its own responsibilities for defective products."

Specifically, the Suvada case held:

(1) That prior to Suvada, privity was an unessential ingredient to liability in a negligence action against a manufacturer, but "that such liability is governed by the same principles governing any action for negligence." In other words, such liability is governed by the "foreseeability test" as in any other negligence action without

74

regard to the nature of the product or whether the defendant knew of its dangerous propensities or not.

(2) That lack of privity is no longer a defense in a tort action against the manufacturer, seller, contractor, supplier, one who holds himself out to be a manufacturer, the assembler of parts and manufacturer of component parts.

(3) That henceforth strict tort liability is imposed against the above parties in cases involving products where the defective condition makes them unreasonably dangerous to the user.

(4) The liability of the above named parties is imposed by operation of law as a matter of public policy for the protection of the public for the following reasons:

(a) The public interest in human life and health demands all the protection the law can give against the sale of unreasonably dangerous products;

(b) The manufacturer solicits and invites the user of his product by advertising or otherwise representing to the public that it is safe for use. Having thus induced the use of the product, the law will impose liability for the damage it causes;

(c) The losses caused by unreasonably dangerous products should be borne by those who have created the risk and reaped the profit by placing these products in the stream of commerce.

(5) That Henningsen v. Bloomfield Motors, Inc., 32 NJ 358, 161 A2d 69; Greenman v. Yuba Power Products, Inc., 59 Cal2d 57, 377 P2d 897, and Goldberg v. Kollsman Instrument Corp., 12 NY2d 432, 191 NE2d 81, represent sound judicial reasoning in extending the concept of strict liability to the manufacturer of products whose defective condition makes them unreasonably dangerous to the user or consumer; that this liability is imposed by law and

"the refusal to permit the manufacturer to define the scope of its own liability for defective products."

(6) That the views expressed in Suvada by the cases cited therein and also by Professor Noel, Professor James and Dean Prosser in various articles they have written on the subject of strict liability coincide with the language of Sec 402A, Restatement of the Law, Second, Torts, which is as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to reach the user or consumer in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

(7) "The plaintiff must prove that his injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control."

The Goldberg case, supra, held that an airplane manufacturer's implied warranty of fitness of airplane for contemplated use ran in favor of airline passenger riding

76

in such plane despite lack of privity of contract, saying at page 83 of 191 NE2d:

"In MacPherson's day enforcement required a suit in negligence. Today, we know from Greenberg v. Lorenz; Randy Knitwear, Inc. v. American Cyanamid Co. (supra) and many another decision in this and other States (see, for instance, Henningsen v. Bloomfield Motors, Inc., 32 NJ 358, 161 A2d 69, 75 ALR2d 1, and Thomas v. Leary, 15 AD2d 438, 225 NYS2d 137) that, at least where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated."

The rationale underlying the cases cited and law scholars quoted by the Supreme Court in Suvada is succinctly stated by Prosser on Torts, Third Edition, Chapter 14, at page 509:

". . . The problem is dealt with as one of allocating a more or less inevitable loss to be charged against a complex and dangerous civilization, and liability is placed upon the party best able to shoulder it. The defendant is held liable merely because, as a matter of social adjustment, the conclusion is that the responsibility should be his."

We have refrained from extended comment on any cases predating Suvada because we believe that Suvada inaugurates a new era in products liability law in Illinois to such an extent that almost all of the cases preceding this decision are completely outmoded. In our opinion, the language of Suvada is plain and unambiguous. Hereafter, manufacturers of unreasonably dangerous

products are strictly liable in tort to the hapless victims of their machines or products.

The wisdom of Suvada is well illustrated by the result reached in the case of Murphy v. Cory Pump & Supply Co., 47 Ill App2d 382, 197 NE2d 849, relied upon by the defendant. Plaintiff, a seven year old child, lost her leg by falling in front of a power mower with a rotary blade which was being operated by her eleven year old sister. The negligence charged was that the mower was inherently dangerous in that the rotary blade would be likely to injure and maim children and that although the rotary blade appeared to be covered, it lacked a safety screen or bar.

The Appellate Court upheld the action of the trial court in allowing a motion for summary judgment in favor of the defendant, giving as its reason that the manufacturer of this mower owed no duty to the plaintiff.

Murphy illustrates a typical result which Suvada seeks to remedy by placing the losses caused by unreasonably dangerous machines or products on those who have created the risk and reaped the profit rather than on an innocent seven-year-old child.

█ The desirability of reaching an opposite result from that which was reached in Murphy is illustrated by a cogent statement from another field of learning. McClure, Power Lawn Mower Injuries, 25 The American Surgeon, 70 (1959) says:

> "It would be wise, . . . , to point out that approximately 30 per cent of all power lawn mowers are made by companies whose primary objective is to turn out a lower priced, sometimes poorly constructed, machine for a profit. These companies have given little or no consideration to safety features of their products and some do not bother to caution the buyer of the machine about its inherent dangers. The low cost of these mowers make them attractive

78

to the unsuspecting customer. On the other hand, some of the more reputable manufacturers have attempted to construct mowers which meet rigid safety standards. These also usually attach a card or booklet of instructions regarding proper operation of the machine and emboss special warnings at the danger points on the machine housing."

In discussing a manufacturer's duties, Harper and James say in Volume II at page 1540:

". . . His specific obligations may be roughly divided into two categories: the first concerns the design, plan, structure, and specifications for the product; the second concerns miscarriages in the process of manufacture because of which the product is not what was intended—it is 'defective' in some respect. It is not suggested that this dichotomy has any automatic or uniform legal significance. Certainly the two classes merge imperceptibly into one another."

The present case involves a claimed defect in design rather than a defect in manufacture and we interpret Suvada to mean that the strict liability imposed upon a manufacturer includes injuries which arise from defects in design as well as defects in manufacture.

Whether the design defect in the present case is of a nature upon which liability can be imposed involves the factual question of whether it creates an unreasonably dangerous condition, or, in other words, whether the product in question has lived up to the required standard of safety.

■ We believe that the complaint in the present case states a good cause of action in negligence and also a good cause of action in strict liability if we treat all of the allegations in excess of those required by Suvada as surplusage.

79

For the foregoing reasons the judgment of the trial court in favor of the defendants is reversed. We remand the case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GOLDENHERSH, P. J. and EBERSPACHER, J., concur.