ANTHONY SIPARI, Plaintiff-Appellant, *v.* VILLA OLIVIA COUNTRY CLUB *et al.*, Defendants-Appellees.—(VILLA OLIVIA COUNTRY CLUB, Cross-Plaintiff and Third-Party Plaintiff-Appellee; CLUB CAR, INC., Cross-Defendant-Appellee; STEVENS APPLIANCE TRUCK COMPANY, Third-Party Defendant-Appellee.)

First District (4th Division) No. 76-452

Opinion filed August 10, 1978.

986

Nicholas Liontakis, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Howard K. Priess, II, of counsel), for appellee Villa Olivia Country Club.

R. L. Berdelle, of Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner and Robert Marc Chemers, of counsel), for appellee Club Car, Inc.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

The plaintiff, Anthony Sipari, brought this action to recover for personal injuries he sustained when a golf cart, allegedly manufactured by defendant Club Car, Inc., and leased to plaintiff by defendant Villa Olivia Country Club, overturned and fell upon him. Plaintiff's suit is based on the doctrine of strict tort liability for the alleged defective design of the golf cart involved. During a jury trial in the circuit court of Cook County, the defendants' motions for directed verdicts in their favor were granted at the close of plaintiff's case. Plaintiff's post-trial motion was denied and he appeals.

To determine whether under the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504) the trial court properly directed verdicts for the defendants, this court must consider (1) whether the alleged exculpation clause in the rental trip ticket was a valid and enforceable bar to plaintiff's strict tort liability action against Villa Olivia Country Club, the lessor of the product; (2) whether "assumption of risk" was properly pleaded, and, under *Pedrick*, did the evidence here justify a directed verdict on this basis; (3) whether, under *Pedrick*, the evidence here justifies a directed verdict on the basis of "misuse"; and (4) whether the plaintiff proved, either directly or circumstantially, that defendant Club Car, Inc. manufactured the vehicle involved or sufficiently "held itself out" as manufacturer of that vehicle.

The facts are as follows: The plaintiff arrived on the premises of defendant Villa Olivia Country Club (hereinafter Villa Olivia or the country club) between 10 and 10:30 a.m. on September 4, 1970. On that date, Anthony Sipari was 57 years old. He had been a golfer for many

years and had played the country club course several times each year for approximately 6 or 7 years prior to the accident. Plaintiff testified at trial that he had driven three-wheeled club cars with tiller-type steering at places other than Villa Olivia. Sipari was accompanied that morning by George Hanrahan, whom he was teaching to play golf. It was a "mucky and sticky" day. It had rained the night before and the grass was completely wet with a heavy dew. Sipari and Hanrahan entered the "pro shop" where a young woman was standing behind a counter. She asked them if they were going to play in a "twosome," and would they like to rent a cart. They replied affirmatively. According to Sipari, the young woman then presented a card, approximately 3 by 4 inches in size, and said, "Will you sign this for your deposit." Sipari testified that the rental fee for the car was $8, in addition to a $2 deposit. Plaintiff then signed the ticket and received a key to the golf cart.

The golf cart rented by plaintiff was a three-wheeled cart with tiller-bar steering. The tiller bar is a looped bar in front of the driver's seat which is connected to the shaft that is attached to the front wheel of the cart. The vehicle rented by plaintiff was a two-pedal model which bore the logo "Club Car, Augusta, Ga." The cart weighed approximately 800 pounds, with a load capacity of 700 pounds and a maximum speed of 12 miles per hour. All such three-wheeled club cars were 103 inches in length and 50 inches in width, with aluminum frames, and were battery operated. In his evidence deposition taken May 21, 1975, William Lindenmuth testified that he had been employed as manager of research and development for Club Car, Inc., for 2 years. Having joined the company in 1968, he did not participate in the formulation of design plans for the three-wheeled golf carts but began working as a designer for the company's experimental four-wheeled cart. According to Lindenmuth, the four-wheeled cart was first marketed in the fall of 1970 or early spring 1971. Club Car, Inc., ceased manufacturing and selling three-wheeled carts in 1971. The four-wheeled cart manufactured by Club Car, Inc. was known as the "Caroche" and had automotive-type steering. Lindenmuth testified that in his opinion the addition of a fourth wheel on a golf cart makes for greater stability.

After plaintiff rented the cart, he and his companion proceeded to play the course. Hanrahan drove the cart and plaintiff rode as his companion until they reached the 12th hole. Plaintiff "teed off" and his ball landed on the green of the 12th hole. Hanrahan "teed off"; however, his ball landed in the rough on the right side of the fairway. Hanrahan walked toward his ball, while plaintiff proceeded to drive the golf cart down the fairway toward the green. According to plaintiff, approximately 30 feet from the green the front of the cart went into a "concave form," the back of the cart elevated, forward motion stopped immediately, and he flew out. He

was holding the tiller bar with both hands and the bar turned with him as he was thrown from the cart. He stated that the bar and the cart both went to the right, the direction in which he was thrown. Plaintiff landed on his back, and the cart rolled onto him. Apparently the vehicle was still moving, and plaintiff had to push the cart back to keep it from moving down on top of him. However, the cart was over his right ankle and part of his left foot. He stated that it was obvious his foot was broken, because when the cart was lifted his knee was facing straight up and his right foot remained flat, on an even level with the fairway. Plaintiff was then taken to St. Joseph's Hospital where he was placed in a cast that extended from his toe to his hip. He remained in the hospital approximately 3½ weeks where he received therapy to restore movement in the right side of his body. Plaintiff testified that he suffered a great deal of pain, and when he returned to work approximately 3 months after the accident it was impossible for him to perform his job properly. At the time of the trial, plaintiff was no longer employed in his former capacity.

Raymond Schei testified that on the date of the accident he was employed by Villa Olivia as superintendent of the golf course. His duties included maintenance of the course and the purchase and maintenance of the golf carts. He stated that the carts owned by Villa Olivia at that time were all three-wheeled carts. Following the accident, Schei tested the cart involved. He was unable to find any defect in the brakes or steering. He stated that the area where he found the cart had no undulations or holes; it was a regular terrain with no ruts. Schei drove the cart after checking it.

Plaintiff's evidence at trial consisted of testimony by employees and officials of the defendants, indicating that the design of the three-wheeled club car could be defective; testimony concerning a prior accident at Villa Olivia; and expert testimony based upon a hypothetical question utilizing identical design features of the subject vehicle which indicated that all such vehicles were dangerous.

Evidence was elicited pertaining to the identity of the manufacturer of the vehicle involved. William Lindenmuth indicated in his testimony that the three-wheeled cart had been manufactured by Club Car, Inc. Phillip Corrado, president of Villa Olivia, testified that in September 1970, Villa Olivia owned 66 three-wheeled golf carts. All of these carts carried a "Club Car" insignia. He stated that the carts arrived from the Stevens factory in Georgia but was unable to testify to the full and correct name of their manufacturer. The carts had been purcased by Villa Olivia through Nickey Chevrolet or Nickey Rent-A-Car. Daniel Corrado, manager of Villa Olivia, testified that the cart rented to plaintiff on the morning of the accident had been manufactured by Stevens Appliance Truck Company. William P. Stevens, Jr., employed by defendant Stevens Appliance Truck Company, served as president of Club Car, Inc. from

April 1969 to December 1973. In his evidence deposition, Stevens testified that defendant Stevens Appliance Truck Company had manufactured golf carts referred to as "Club Cars." He stated that all three-wheeled golf carts sold to Nickey Rent-A-Car prior to and including 1968 were manufactured by Stevens Appliance Truck Company. Robert Balfour, sales manager for the car division of Stevens, testified that he had been employed in this capacity since June 23, 1966. Balfour stated in his deposition that until April 1, 1969, Stevens Appliance Truck Company designated their golf carts with the insignia "Club Car, Augusta, Georgia" affixed to the exterior of each cart. Balfour also stated that Club Car, Inc., first came into existence on April 1, 1969, as a corporation separate from Stevens Appliance Truck Company.

The record reveals that Villa Olivia Country Club is an Illinois corporation, doing business at Bartlett, Illinois. Stevens Appliance Truck Company was chartered by the State of Georgia on January 4, 1960. Club Car, Inc., was incorporated in the State of Georgia on May 27, 1968. The incorporators of both Georgia corporations were members of the W. P. Stevens family of Augusta, Georgia. The officers, directors, and shareholders consisted primarily of family members. The locations of the physical plants of both corporations were identical and both used the same post office mail box. Apparently, subsequent to April 1, 1969, Club Car, Inc., leased its facilities from Stevens Appliance Truck Company which continued to own the buildings and land.

Plaintiff filed his amended complaint on September 1, 1972. Count I was directed against Villa Olivia, and count II was directed against the alleged manufacturer of the defectively designed golf cart; Club Car, Inc. Both counts sounded in strict liability. On May 16, 1975, Villa Olivia filed a counterclaim against defendant Club Car, Inc.; on July 1, 1975, Villa Olivia filed its third-party complaint against third-party defendant Stevens Appliance Truck Company.

At trial, the posture of Club Car, Inc., was essentially that it could not be held liable for plaintiff's injuries because plaintiff failed to prove that it manufactured the subject vehicle. Plaintiff contended that certain testimony of William Lindenmuth—that of his own knowledge his employer did manufacture the golf cart—was a judicial admission binding upon Club Car, Inc. However, the trial court struck this testimony in its entirety. Plaintiff then argued in the alternative that the evidence established that Club Car, Inc., had sufficiently held itself out as manufacturer for liability to attach. Plaintiff contended that sufficient facts were presented to raise a jury question on this issue. The trial court disagreed, however, and granted the motion for a directed verdict of defendant Club Car, Inc., and third-party defendant Stevens Appliance Truck Company.

Defendant Villa Olivia contended at trial, as it argues on appeal, that the exculpation clause embodied in the language of the rental ticket precludes its liability in the instant case. The country club asserted three affirmative defenses: (1) Assumption of risk, (2) misuse, and (3) the exculpation clause. The trial court granted Villa Olivia's motion for a directed verdict in its favor at the close of plaintiff's evidence.

OPINION

The law in Illinois is supportive of plaintiff's contention that the exculpation clause contained in the rental ticket does not preclude Villa Olivia's liability in this strict liability action. (See *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Wright v. Massey-Harris, Inc.* (1966), 68 Ill. App. 2d 70, 215 N.E.2d 465; *Haley v. Merit Chevrolet, Inc.* (1966), 67 Ill. App. 2d 19, 214 N.E.2d 347.) As plaintiff maintains, strict tort liability is imposed by operation of law as a matter of public policy for the protection of the public. The above cited cases have repeatedly confirmed that liability in a strict liability action is imposed independent of contractual considerations, and the one liable cannot contract away his own responsibility for having placed a defective product into the mainstream of public use. In *Wright,* the court stated:

> "[I]mplicit in the reasoning of the cases imposing strict liability is that 'liability is imposed by law and the refusal to permit the manufacturer to define the scope of its own responsibilities for defective products.' " (68 Ill. App. 2d 70, 74.)

In *Haley,* the court stated:

> "The liability imposed by Suvada upon the sellers of defective products is a strict liability in tort, and is not based upon the theory of breach of implied warranty. A seller, therefore, cannot protect himself from this liability under Illinois law by expressly negating the existence of any implied warranties. Furthermore, the court in Suvada recognized that sound reasons of public policy were responsible for the extension in a number of jurisdictions of strict liability to the manufacturers of products whose defective condition makes them unreasonably dangerous to the user. To allow the dealer to limit, by contract, his tort liability for such defects in [a product] to the repair or replacement of defective parts would defeat those reasons. We conclude, therefore, that the attempted elimination by the dealer of all obligations other than replacement of defective parts is violative of public policy and void." (67 Ill. App. 2d 19, 30.)

The strict liability imposed by *Suvada* applies not only to manufacturers but also to distributors and retailers (*Dunham v. Vaughan & Bushnell Mfg. Co.* (1967), 86 Ill. App. 2d 315, 334, 229 N.E.2d 684, 693), and lessors.

(*Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 277-78, 274 N.E.2d 178, 182.) Therefore, we find that the exculpation clause here did not function to preclude the imposition of strict liability on Villa Olivia. To hold otherwise would be to contravene the essence of strict tort liability.

We find that the evidence in the instant case did not justify a directed verdict on the basis of Villa Olivia's affirmative defense of assumption of risk.

The test of whether a user of a product has assumed risk is necessarily subjective, and consideration must be given to the users' age, experience, knowledge, and understanding, as well as the obviousness of the defect and the danger it poses. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430-31, 261 N.E.2d 305, 312; *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 990, 326 N.E.2d 74, 87.) In *Scott*, the court said:

"Assumption of the risk, as used in comment *n* to Restatement (second) of Torts §402A (1965) is referred to as voluntarily and unreasonably proceeding to encounter a known danger. Whether the character of plaintiff's conduct is such that he may be deemed to have voluntarily and unreasonably encountered a known risk must necessarily depend upon the particular circumstances of each case. * * * There must, we think, be an element of conscious conduct resulting in the injury which is not satisfied by mere inadvertence or momentary inattention." 26 Ill. App. 3d 971, 990-91.

The instant plaintiff was 57 years of age at the time of the accident; he had been a golfer for many years and had played the Villa Olivia course on numerous prior occasions. Plaintiff testified that he had driven three-wheeled golf carts with tiller-type steering at clubs other than Villa Olivia without incident. The alleged defect in the golf cart involved is one of design, in that the design of this particular cart created an undesirable element of instability. Evidence was presented which indicated that the subject golf cart could be defective and dangerous due to its design. However, no evidence was presented to indicate that this danger was known to plaintiff, and that he voluntarily and unreasonbly assumed the risk of injury. No evidence was presented that plaintiff at any point discovered the hidden danger and unreasonably continued to proceed.

■■ In our consideration of the totality of the evidence in its aspect most favorable to defendant Villa Olivia (*Scott v. Dries & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971-89, 326 N.E.2d 74, 86), it is our determination that the affirmative defense of assumption of risk should have been stricken by the trial court. The law, as stated by the *Scott* court, is that:

"[B]efore the defense is properly submitted to the jury, there must

be *some* evidence which will permit a finding that the one charged with assuming the risk had knowledge of the particular risk, and, comprehending and appreciating such risk, voluntarily took his chances of harm therefrom." (26 Ill. App. 3d 971, 990.) There was no such evidence in the instant case.

It is established that the "misuse" of a product by a plaintiff may preclude his recovery in a subsequent strict liability action. In *Williams v. Brown Mfg. Co.* (1970), 45 Ill. 2d 418, 425, 261 N.E.2d 305, 309, our supreme court held:

> "[A] greater degree of culpability on plaintiff's part may be necessary in order to preclude recovery and simple contributory negligence will not suffice. In determining where the loss should fall as between the nonnegligent manufacturer, distributor or retailer and the less than careful plaintiff, it has generally been recognized that plaintiffs who 'misuse' a product—use it for a purpose neither intended nor 'foreseeable' (objectively reasonable) by the defendant—may be barred from recovery."

■■ We find that a verdict should not have been directed against plaintiff on this issue. In viewing the totality of the evidence in its aspects most favorable to plaintiff, we cannot say that it so overwhelmingly favors defendants that a finding for plaintiff on this issue could never stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Although plaintiff may have driven the golf cart at full speed, mere carelessness or negligence is not enough to bar his recovery in this action. Plaintiff's behavior was not patent "misuse," since at the time of the accident he was using the golf cart for an intended purpose, and the trier of fact could reasonably have found that it was foreseeable to defendants that the cart might be driven at full speed.

■■ The strict liability imposed by *Suvada* extends to manufacturers, sellers, contractors, those who hold themselves out to be manufacturers, assemblers of parts, and suppliers and manufacturers of component parts. (*Wright v. Massey-Harris, Inc.* (1966), 68 Ill. App. 2d 70, 73, 215 N.E.2d 465, 467.) Plaintiff contends that his evidence presented a prima facie case against Club Car, Inc., as manufacturer of the defective golf cart, and that the evidence was sufficient to be presented to a jury for its consideration. Plaintiff maintains, and we agree, that the trial court violated the *Pedrick* standard (*Pedrick*, at 510) and invaded the province of the jury when it directed a verdict against plaintiff on this issue.

In *Bass v. Rothschild Liquor Stores, Inc.* (1967), 88 Ill. App. 2d 411, 417, 232 N.E.2d 19, 22, the court held:

> "A verdict should not be directed if there is evidence supporting the opposite party's case except in those rare cases in which all the evidence, when viewed in its aspect most favorable to the opposite

party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand."

In *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57, 349 N.E.2d 399, 407-08, the court stated: "The *Pedrick* rule was designed to prevent a trial judge from assuming the duties of the trier of fact in a jury case." The instant record reveals evidence that raises a genuine question of fact as to whether Club Car, Inc. sufficiently held itself out as manufacturer of the golf cart that bore its logo for liability to be imposed. We conclude that when the evidence is viewed in its aspect most favorable to plaintiff, it does not so overwhelmingly favor the defendant that no verdict for plaintiff on this issue could ever stand.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

DIERINGER and LINN, JJ., concur.