## Jankowski v. Ski Roundtop Inc.

*Terry S. Hyman*, for plaintiff.
*Hugh M. Emory*, for defendant.

KUHN, *J.*, September 10, 1986 — Plaintiff brought this action for injuries received January 9, 1982, while skiing at a public ski area owned and operated by defendant. Plaintiff arrived at the ski resort in mid-morning and rented skis, boots, poles and bindings from defendant's rental concession. At that time she executed a rental agreement[1] which

---

1. The document reads:

COMPLETE SET
SKIS, BOOTS & POLES

PLEASE READ

I hereby accept rental skis from the SKI LIBERTY Rental Shop.

I recognize the fact that any bindings, including the release type, may not release under certain falls and stresses, particularly slow falls, and that injuries can result.

I recognize the fact that there is an inherent danger in the use of any ski equipment, and in consideration of the rental to me of this ski equipment I agree to hold SKI LIBERTY and/or any employee thereof harmless and blameless because of any accident or injury which I might receive while using such equipment. If you do not agree, do not rent.

I HAVE READ THE ABOVE AND UNDERSTAND IT FULLY.

/s/Terry Jankowski
(signature)

defendant claims was a release from liability. At approximately 2:30 p.m., plaintifff suffered a fall resulting in certain injuries to her knee.

Plaintiff claims that the ski bindings failed to release at the time of her fall, keeping her foot bound to the ski, resulting in her injury. In count I, she alleges that defendant is liable under section 402A of the Restatement (Second) of Torts as a supplier of defective skis and bindings. In count II, plaintiff avers that defendant was negligent in the selection, adjustment and fitting of the skis, as well as for failing to warn her of the risks of injury associated with the skis.

Defendant filed a motion for judgment on the pleadings asserting that exculpatory language in the rental agreement signed by plaintiff is dispositive of her claims.

A motion for judgment on the pleadings under Pa.R.C.P. 1034 is, in effect, a demurrer before trial, and in considering the motion, the court is guided by the same principles applicable in disposing of a preliminary objection in the nature of a demurrer. The purpose of the motion is to determine whether, on the pleadings, it would be useless to proceed to trial. Therefore, the court must accept as true only admitted averments of fact by the opposing party which are material and relevant and which are contained in the pleadings and documents attached thereto. Judgment on the pleadings should be entered only where the right is clear and free from doubt. *London v. Kindsley,* 368 Pa. 109, 111, 81 A.2d 870, 871 (1951); *Bogojavlensky v. Logan,* 181 Pa. Super. 312, 316, 124 A.2d 412, 416 (1956); *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 378, 224 A.2d 174, 178-9 (1966), cert. den. 386 U.S. 1007, 18 L.Ed.2d 433, 87 S.Ct 1348.

Initially, we find that defendant's motion with respect to plaintiff's claim of negligence (count II) must be granted on the basis of *Zimmer v. Mitchell & Ness*, 253 Pa. Super. 474, 385 A.2d 437 (1978), aff'd per curiam, 490 Pa. 428, 416 A.2d 1010 (1980). In *Zimmer,* plaintiff executed a "Rental Agreement and Reciept"[2] at the time he rented ski equipment at the Camelback ski area. While skiing, his ski bindings failed to release during a fall causing him to sustain injury.

Referring to the earlier case of *Employers Liability Assurance Corp. v. Greenville Business Men's Association*, 423 Pa. 288, 224 A.2d 620 (1966) the Superior Court in *Zimmer,* noting that exculpatory clauses are not favored in the law, described the criteria for determining the validity of such clauses: (1) the contract must not contravene any policy of the law, (2) it must be a contract between individuals relating to their private affairs, (3) each party must be a free bargaining agent, not simply one

---

2. The agreement provided;

"RENTAL AGREEMENT AND RECEIPT

I accept for use as is the equipment listed on this form and accept full responsibility for the care of the equipment while it is in my possession, and agree to reimburse Mitchell and Ness Ski Shop for any loss or damage other than reasonable wear resulting from use.

I understand that insurance coverage applies to equipment breakage only, not lost, misplaced or stolen equipment.

I understand that so-called safety bindings furnished herewith are releasable bindings designed to reduce the risk or degree of injuries from falling and that these bindings will not release under ALL circumstances and are no guarantee of my safety.

I furthermore release Mitchell and Ness from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury."

drawn into an adhesion contract, with no recourse but to reject the entire transaction, (4) the agreement must be construed strictly against the party asserting it, and (5) the agreement must spell out the intent of the parties with the utmost particularity. 253 Pa. Super. at 478, 385 A.2d at 439.

Looking at the agreement as a whole and using a common sense interpretation, the court found the agreement to be valid and a clear expression of an intent to exculpate defendant. This conclusion was made despite plaintiff's contention that the title of the agreement did not indicate that the document contained a release from liability and further that the word "negligence" does not appear in the body of agreement.

We find no significant difference between the rental agreements in *Zimmer* and the case sub judice. In each instance, (1) the heading of the agreement did not suggest exculpatory language, (2) warning was given that the bindings may not release under certain falls and injuries can result, and (3) the agreement did not specifically exculpate defendant from negligence, instead, it referred to any accident or injury "resulting from" or "while using" the equipment.

For the reasons set forth in *Zimmer* and *Greenblatt v. Big Boulder Ski Shop*,[3] the instant agreement was not a contract of adhesion. The agreement concerns a purely recreational activity. Plaintiff was free to participate or not to participate. She was under no compulsion, economic or otherwise to ski.

More difficult to evaluate is the relationship between the exculpatory language of the rental agree-

---

3. Pennsylvania Supreme Court, no. 00254 Phila. 1984, filed January 9, 1985.

ment and plaintiff's claim under section 402A of the Restatement.[4] Strict liability recovery under section 402A has been recognized in Pennsylvania since *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). On its face, section 402A applies to sellers of defective products and admittedly defendant is a lessor. However, *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), held that one in the business of supplying chattels is responsible under a theory of strict liability pursuant to section 402A, even where a lease arrangement exists, if injury results from a defective condition unreasonably dangerous to the user.

Interestingly, plaintiff in *Zimmer*, supra, sued under section 402A, as well as negligence. However, the appellate court opinions discussed the effect of the exculpatory language on the negligence claim. We are not willing to adopt *Zimmer,* as defendant would have us do, as dispositive respecting strict liability.

The court has been unable to locate, and counsel have not cited, any Pennsylvania case discussing the validity of a disclaimer of strict liability in a con-

---

4. Section 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

sumer setting. While Pennsylvania law would appear to permit a freely negotiated and clearly expressed waiver of section 402A liability between business entities of relatively equal bargaining strength, *Keystone Aeronautics Corporation v. R. J. Enstrom Corporation,* 499 F.2d 146 (3rd Cir. 1974); *Ebasco Services Inc. v. Pennsylvania Power & Light Company,* 460 F. Supp. 163 (E.D. Pa., 1978), it would appear that for reasons of social policy strict liability should not be disclaimed in "garden variety" consumer transactions, *Keystone,* 364 F. Supp. 1063, 1065 (W.D. Pa., 1973).

The section 402A public policy purpose of protecting the average consumer who is not in a position to bargain effectively or intelligently would be made a nullity if defendant's position was embraced. As the court of appeals reasoned in *Keystone,* supra:

"If a disclaimer on the label of a product or in a printed form sales contract would be effective to limit liability under section 402A, then obviously sellers would utilize such devices to nullify their responsibility. And it is significant that the application of section 402A is limited to a ' . . . product in a defective condition unreasonably dangerous . . .' A social policy aimed at protecting the average consumer by prohibiting blanket immunization of a manufacturer or seller through the use of standardized disclaimers engenders little resistence." 499 F.2d at 149.

An excellent example of a decision recognizing these social considerations is *Sipari v. Villa Olivia Country Club,* 63 Ill. App. 3d 985, 20 Ill. Dec. 610, 380 N.E. 2d 819 (1978). There plaintiff rented a three-wheel golf cart which rolled over onto him causing injury. The appellate court held that as a matter of public policy the exculpation clause

contained in the rental ticket signed by plaintiff did not preclude the country club's liability in the strict liability action. The court reasoned that to hold otherwise would be to contravene the essence of strict tort liability.

The parties in the case sub judice were engaged in a consumer transaction and were not business entities of relative equal bargaining strength. Therefore, for public policy reasons, this attempt to contravene section 402A liability is ineffective.

Accordingly, we enter the following

## ORDER

And now, this September 10, 1986, defendant's motion for judgment on the pleadings as to count I is denied. The motion as to count II is granted.